

**STATE OF FLORIDA**                    **CASE NO. 6:18-mc-69-37DCI**

**COUNTY OF ORANGE**

**FILED UNDER SEAL**

**COMPLAINT**
18 U.S.C. § 3184

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1.      In this matter, I represent the United States in fulfilling its treaty obligation to Mexico.

2.      There is an extradition treaty in force between the United States and Mexico, the Extradition Treaty between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, *as amended by* the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, U.S.-Mex., Nov. 13, 1997, S. Treaty Doc. No. 105-46 (1998) (collectively referenced hereafter as the "Treaty").  ·

3.      Pursuant to the Treaty, the Government of Mexico has submitted a formal request through diplomatic channels for the extradition of ABEL SERRANO PÉREZ, a/k/a Abel Perez Serrano ("SERRANO PÉREZ").

4.      According to the information provided by Mexico, SERRANO PÉREZ is charged with the homicide of Raúl Antonio Moedano Gress ("Moedano Gress"), in violation of Article 136 of the Penal Code for the State

of Hidalgo, Mexico, and the attempted homicide of José Alberto López Gress

("López Gress") and Rodolfo Hernández Moedano ("Hernández Moedano"),

in violation of Articles 14(2), 103, and 136 of the same code.

     5.     These offenses were committed within the jurisdiction of Mexico.

On January 9, 2001, the First Judge for Criminal Matters in the Judicial

District of Pachuca, Hidalgo, issued a warrant for the arrest of SERRANO

PÉREZ.

     6.     The warrant was issued on the basis of evidence that on

September 17, 2000, in Arenal, Hidalgo, SERRANO PÉREZ fatally shot

Moedano Gress, and also shot at Hernández Moedano and López Gress,

wounding the latter, as described below.

     a.     On the evening of September 16, 2000, a party was held in

the town of Santa Rosa, Ojo de Agua, in the municipality of Arenal, Hildalgo,

to celebrate Mexico's Independence Day. Hernández Moedano and his

friend, López Gress, attended the party along with López Gress's cousin,

Moedano Gress, and others. SERRANO PÉREZ also attended the same

party. According to Hernández Moedano and López Gress, neither of them

knew SERRANO PÉREZ personally, but they recognized him by sight

because he was a public official for the municipality of Hildalgo.

b.     In a statement given on September 21, 2000, Hernández Moedano told Mexican authorities that around 2:00 a.m. on September 17, 2000, he was leaving the party with López Gress and Moedano Gress. As the three men were walking out, Hernández Moedano saw two individuals who were embracing and who also appeared to be leaving the party. One of the individuals suddenly became agitated and, without any provocation, turned to Hernández Moedano, Moedano Gress, and López Gress, and cursed at them. Immediately thereafter, Hernández Moedano noticed that that individual had a firearm in his right hand, which the individual then fired three times. The first shot did not strike anyone, but the next two struck Moedano Gress and López Gress. As Moedano Gress and López Gress fell to the ground, Hernández Moedano grabbed the gun-wielding assailant's right hand. Hernández Moedano shouted out to López Gress to get up and help him subdue the assailant. The assailant struggled and tried to aim the gun at Hernández Moedano; however, the individual accompanying the assailant disarmed the assailant and fled. Others from the party soon came outside, and, thereafter, Hernández Moedano saw the assailant being beaten by several people, and he heard some of them say, "It's Abel Serrano, the clerk."

c.     In a statement given on October 5, 2000, López Gress similarly told Mexican authorities that on September 17, 2000, at about 2:00

a.m., he, Moedano Gress, and Hernández Moedano left the party in Santa

Rosa.  As they were walking to López Gress's vehicle, two individuals, who

were embracing, crossed their path, and one began cursing at them.  One of

the individuals had a firearm in his right hand.  Suddenly, that individual shot

at them three times.  The first shot did not hurt anyone, but the second hit

López Gress in the left leg, and the third hit Moedano Gress.  López Gress

then saw Hernández Moedano lunge towards the assailant to try to subdue

him, and López Gress got up to help him restrain the assailant.  Shortly

thereafter, several people rushed outside and restrained the assailant, and a

number of people, including López Gress's brother, identified the assailant as

"Abel Serrano."

      d.    López Gress and Moedano Gress were taken to the

General Hospital of Pachuco, Hidalgo.  Moedano Gress was declared dead

upon arrival.  Subsequent forensic chemistry analysis of samples taken from

the hands of López Gress and Moedano Gress was negative for the presence

of barium and/or lead from having fired a firearm.

      e.    Local residents delivered SERRANO PÉREZ to an

official of Hildalgo, who assured them she would pursue the matter, but by the

next day, SERRANO PÉREZ was no longer in custody, and his whereabouts

were unknown.  Prior to his release from custody, on September 18, 2000,

SERRANO PÉREZ told Mexican authorities that, when he and another individual named Gregorio left the party in Santa Rosa and were walking to their truck, they were approached by three individuals who began cursing at them, punching them, and kicking them. SERRANO PÉREZ was frightened and remembered he had a gun, which he pulled out from the right side of his waist, and he fired one shot at the ground to scare his attackers. The attackers continued to punch him, so he fired another shot at the ground. When one of the attackers raised a knife in his right hand intending to throw it at SERRANO PÉREZ, SERRANO PÉREZ shot at him. When the attacker fell to the ground, the other two attackers went to his aid, and SERRANO PÉREZ was able to run to his truck and drive away. He later fled to the United States.

      f.     On August 11, 2014, López Gress and Hernández Moedano identified a photograph of SERRANO PÉREZ as the person who wounded López Gress and killed Moedano Gress.

      g.     The medical expert of the Office of the Attorney General of Hidalgo State issued an autopsy report dated September 17, 2000, concluding that Moedano Gress's cause of death was secondary acute anemia from a visceral laceration caused by a single gunshot. Further, the medical

expert determined that López Gress had sustained life-threatening injuries from his gunshot wound.

7.     SERRANO PÉREZ may be found within the jurisdiction of this Court in Ocoee, Florida.  The United States Marshals Service has current detailed location information.

8.     Kimberly A. Jackson, an attorney in the Office of the Legal Adviser of the U.S. Department of State, provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offenses for which extradition is demanded are provided for by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Mexico, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

9.     The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Mexico, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit #1) are filed with this complaint and incorporated by reference herein.

10.    SERRANO PÉREZ would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of ABEL SERRANO PÉREZ be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Mexico, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered, and that this complaint and the requested warrant be placed under the seal of the Court until such time as the warrant is executed.

EMBRY J. KIDD
Assistant United States Attorney

Sworn to before me and subscribed
in my presence this 12 day of
December, 2018.

DANIEL C. IRICK
United States Magistrate Judge